IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MIRIAM LOPEZ,<br><br>**Plaintiff,**<br><br>v.<br><br>PATRICK DONAHUE, United States<br>Postmaster General, *et al.*,<br><br>**Defendants.** | CIVIL NO. 11-1457 (JAG) |

## OPINION & ORDER

Garcia-Gregory, D.J.

Pending before the Court is the United States Government's (the "Government") motion for summary judgment. (Docket No. 32). Plaintiff timely opposed. (Docket No. 35). For the reasons that follow, the Court GRANTS the Government's motion.

## STANDARD OF LAW

Federal Rule of Civil Procedure 56 states, in pertinent part, that a court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

CIVIL NO. 11-1457 (JAG)                                                      2

Fed.R.Civ.P. 56(c); <u>see</u> <u>also</u> <u>Santiago-Ramos v. Centennial P.R.</u>
<u>Wireless Corp.</u>, 217 F.3d 46, 52 (1st Cir. 2000).

        Summary  judgment  is  appropriate  if  "there  is  no  genuine
issue  as  to  any  material  fact  and  ...  the  moving  party  is
entitled  to  a  judgment  as  a  matter  of  law."  See  Fed.R.Civ.P.
56(c). The  party  moving  for  summary  judgment  bears  the  burden  of
showing  the  absence  of  a  genuine  issue  of  material  fact.  <u>See</u>
<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

        In  order  for  a  factual  controversy  to  prevent  summary
judgment,  the  contested  facts  must  be  "material"  and  the  dispute
must  be  "genuine".  "Material"  means  that  a  contested  fact  has
the  potential  to  change  the  outcome  of  the  suit  under  governing
law.  The  issue  is  "genuine"  when  a  reasonable  jury  could  return
a  verdict  for  the  nonmoving  party  based  on  the  evidence.  <u>See</u>
<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). It is
well  settled  that  "[t]he  mere  existence  of  a  scintilla  of
evidence"  is  insufficient  to  defeat  a  properly  supported  motion
for  summary  judgment."  <u>Id.</u>  at  252.  It  is  therefore  necessary
that  "a  party  opposing  summary  judgment  must  present  definite,
competent  evidence  to  rebut  the  motion."  <u>Maldonado-Denis  v.</u>
<u>Castillo-Rodriguez</u>, 23 F.3d 576, 581 (1st Cir. 1994).

        In  making  this  assessment,  the  court  "must  view  the  entire
record  in  the  light  most  hospitable  to  the  party  opposing

CIVIL NO. 11-1457 (JAG)                                                      3

summary judgment, indulging in all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

## BACKGROUND

Local Rule 56 provides, *inter alia*, that:

> [f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule shall be deemed admitted unless properly controverted. An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.

This rule "relieve[s] the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." CMI Capital Market Inv. v. González-Toro, 520 F.3d 58, 62 (1st Cir. 2008). Thus, parties cannot simply "shift the burden of organizing the evidence presented in a given case to the district court."

CIVIL NO. 11-1457 (JAG)                                        4

Mariani-Colón v. Dep't of Homeland Sec., 511 F.3d 216, 219 (1st Cir. 2007). A litigant ignores these directives at their own peril: "If the party opposing summary judgment fails to comply with Local Rule 56(c), the rule permits the district court to treat the moving party's statement of facts as uncontested." Id.

     After applying Local Rule 56, the Court finds the following facts[1] are uncontested, unless otherwise noted:

1. Plaintiff, Miriam Lopez, is an employee at the Detached Mail Distribution Unit ("DMDU") Cataño Annex in Cataño, Puerto Rico.

2. Plaintiff began working for the Postal Service on April 12, 1986.

3. From January 11, 2003 until September 25, 2010, she worked full time as a maintenance mechanic MPE (mail processing equipment) (grade: PS-09). She holds a bargaining unit position for which the American Postal Workers Union ("APWU") provides exclusive representation with respect to the terms and conditions of employment.

4. The duties of the MPE position include troubleshooting and complex maintenance of mail processing equipment. It also includes preventive maintenance inspections of mail processing equipment, building and building equipment. The duties sometimes require heavy lifting, as well as other large motor skills. They also require use of hand and power tools, gauging devices and electrical equipment (i.e. fine motor skills). [Ex. 2, USPS STD Job Description, Maintenance Mechanic (MPE) PS-09 dated 11/16/09].

---

[1] The Court takes these facts from Defendant's Statement of Uncontested Facts at Docket No. 32-2, and preserves the numbering scheme present therein. Citations are preserved wherever a fact is opposed by Plaintiff.

CIVIL NO. 11-1457 (JAG)                                                5

Pointing to the same exhibit, Plaintiff objects that the duties involved "require heavy lifting, as well as other large motor skills." (Docket No. 35-1, Plaintiff's Opposition to Defendant's Statement of Uncontested Facts ("Opp.") at ¶ 4). At most, the description states that the MPE "[u]ses necessary hand tools and power tools." The Court thus finds Plaintiff's contention enough to raise a genuine dispute on this matter.

5. Plaintiff admits her supervisor, José M. Rivera, was a "difficult" person. She admits that if he decided he did not like an employee, regardless of their age or gender, he would be mean to that person. **[Ex. 3, Plaintiff's Deposition dated June 13, 2012, p. 30, l. 10 - p. 31, l.14; p. 39, l. 3 - p. 40, l. 25].**

Plaintiff qualifies this statement, arguing that Rivera's actions were due to age and gender discrimination. However, Plaintiff's deposition testimony clearly shows that Rivera behaved the same way regardless of the person's age or gender. (See Docket No. 32-5 at p. 40).

4. On January 8, 2009, Plaintiff sustained an on-the-job injury when she allegedly fell down the stairs she used on a daily basis to perform her assigned duties.

5. Plaintiff filed an injury compensation claim with U.S. Department of Labor's Office of Workers' Compensation Program (OWCP). On April 21, 2009, OWCP accepted Plaintiff's lumbar injury as an on-the-job injury.

6. Plaintiff also filed a second claim with the OWCP for carpal tunnel syndrome. That claim was denied.

CIVIL NO. 11-1457 (JAG)                                                  6

7. Several offers of a modified work schedule were made to
Plaintiff to accommodate her medical restrictions. On April 16,
2009, she was offered a "General Clerk" position.

8. At approximately the end of July 2009, this temporary work
assignment ended because Plaintiff's doctor stated her condition
was aggravated and she needed a much more passive job.

9. On August 6, 2009, Plaintiff refused a new job offer
scheduling her from 2100 to 0530 at the San Juan Processing and
Distribution Center listing her duties as casing mail in a
manual case, dispatching letters, and placing trays and letters.
Plaintiff refused this offer because she claimed to have a sleep
disorder.

10. Plaintiff then returned to doing a portion of her MPE job,
but not the core duties. She visually monitored a Small Parcel
Bundle Sorting machine (SPBS) for an entire tour/shift (8
hours). [Ex. 11, Plaintiff's Deposition dated June 13, 2012, p.
62, l. 3 - p. 63, l. 15].

    Plaintiff successfully objects to the first sentence,

pointing to a declaration made by a maintenance supervisor and

her work logs. These tend to show Plaintiff was performing most

of her job duties, which included "solving minor situations as

jams and the alignment of sensors." (Docket No. 35-8).

11. On or about November 3, 2009, Plaintiff submitted another
DOL Form CA-17. This new form limited her to lifting, pushing
and pulling only up to twenty pounds. It also said she could not
climb or kneel.

12. A third US DOL Form CA-17 dated 1/28/10 was similar to the
prior US DOL CA-17 except it reduced the amount of simple
grasping allowed to one hour per day.

13. A fourth US DOL Form CA-17 dated May 3, 2010, again noted
simple grasping was limited to one hour per day and no fine
manipulation was allowed.

14. A fifth US DOL CA-17 dated 9/28/10 limited lifting to twenty pounds, standing to three hours, walking to three hours per day, simple grasping and fine manipulation to one hour per day and no climbing, kneeling or reaching above her shoulder. This US DOL also stated her conditions were permanent and irreversible. **[Ex. 13, DOL Form CA-17, dated 9/28/10, Ex. 12, *supra*.].**

Plaintiff counters that this form was altered by her supervisor "without any authorization, with the sole intention of affecting" her job. (Docket No. 35-1). She points to a rather heated letter written and signed by Dr. Luis E. Faura Clavell, stating that the "local supervisor and injury compensation employees" were the ones who "created the false situation" relating to Plaintiff's supposed health condition. (Docket No. 35-10 at p. 2). Plaintiff does not raise such an objection to the Government's statements regarding her previous DOL forms.

16. In 2009, a National Reassessment Program ("NRP") was implemented to make the necessary adjustments for the decreased funds and workloads being experienced by the Postal Service. [Ex. 14, NRP "Stand Up Talk" and procedures].

17. The NRP was conducted in phases and officially ended in January 2011. Phase One focused on reviewing and updating injured employees' records. Phase Two focused on identifying the cumulative tasks available at each postal facility for the development of work assignment offers. [*Id*.].

18. The NRP process determined that only two hours of mechanical observation were necessary for the machines Plaintiff monitored. Thus, Plaintiff's job was greatly unnecessary, and it was eliminated. However, also as part of the NRP, management then assigned Plaintiff a new position that consisted of only three hours of work as that was the only work available within her medical restrictions. Plaintiff claimed these duties exceeded her medical restrictions, so she was offered work monitoring the

CIVIL NO. 11-1457 (JAG)                                          8

machines for two hours. On September 24, 2010, Plaintiff
accepted this limited-duty position to be effective September
25, 2010. [Ex. 15, Offer of Modified Assignment dated 09/24/09].

    Plaintiff objects without citing to a specific part of the
record supporting her objection. This fact is thus deemed
admitted.

19. Plaintiff admits that no one misrepresented the September
24, 2010 job offer to her and she had two union representatives
with her at the meeting where the offer was made and accepted by
her. [Ex. 16, Plaintiff's Deposition dated June 13, 2012, p. 97,
l. 8 - p. 98, l.24].

    Plaintiff qualifies this statement, pointing to her
deposition testimony in which she stated that her shop steward
had advised her not to sign any modified work assignment, and
that that she was not given a choice but to sign the agreement
or risk losing her OWCP claim. But it is still uncontested that
she was accompanied by two union representatives, and that she
knew what she was signing. The Court notes neither party points
to evidence showing that the management had conditioned
Plaintiff's OWCP benefits on her acquiescence to the modified
assignment.

20. Plaintiff admits that none of her supervisors in her direct
chain of command were involved in the development or
implementation of the NPR. She also admits that it was a
nationwide program that affected the positions of both men and
women. [Ex. 17, Plaintiff's Deposition dated June 13, 2012, p.
42, l. 20 - p. 43, l. 9; p. 80, ll. 16-20].

Plaintiff objects, stating that Plaintiff's supervisor and other Defendants "forced Ms. Miriam Lopez to sign the Modified Assignment." (Docket No. 35-1). But as explained above, she does not point to any concrete evidence tending to show she was coerced into signing that agreement. In any event, the Court is not sure how Plaintiff's objection is relevant as to this fact.

21.  Plaintiff has not previously alleged harassing or discriminatory comments. Her administrative complaint focuses solely on the reduction of hours. Notably, Plaintiff's affidavit given to the EEO investigator states there was no harassment other than the reduction of hours.

22. The EEO investigation NRP data from the Caribbean District shows that forty-one (41) employees were reviewed in Plaintiff's section (the Maintenance Department of the Cataño Annex in Cataño). The majority of employees reviewed were male, not female. Further, fourteen employees received partial day offers, four of which were female. Of these fourteen employees, eight received offers of work less than four hours per day. Of these eight employees, only two were women. The ages of the affected employees ranged from thirty-two (32) to seventy-three (73). [Ex. 19, NRP data from the Caribbean District].

Plaintiff objects, stating that she was "forced to sign" the agreement or else she would lose her OWCP benefits. Once again, she fails to properly cite the record in support of her statement. This fact is thus admitted.

## DISCUSSION

Plaintiff claims that she suffered discrimination on the basis of age and gender while working for the United States Post Office. She also claims that she was subject to a hostile work

CIVIL NO. 11-1457 (JAG)                                                10

environment as a result of derogatory comments and actions taken by the named defendants in this suit.[2] The Government contends Plaintiff cannot make out a *prima facie* case of age or gender discrimination, and also argues that Plaintiff fails to meet her burden on her hostile work environment claim.

We start with the common analytic framework that undergirds Plaintiff's claims of discrimination based on a disparate treatment theory. To prove this type of claim, an employee may rely on direct or circumstantial evidence. Here, however, direct evidence of discrimination is lacking. In this case, courts use the familiar burden-shifting framework developed by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The first step is taken by Plaintiff, who must establish a *prima facie* case of discrimination. If successful, the spotlight turns to the Government, who must articulate –not prove– a legitimate, non-discriminatory reason for its action. Finally, the Plaintiff, who bears the ultimate burden of persuasion throughout this analysis, must show that the Government's proffered reason is but pretext for discrimination. See generally Hoffman v. Applicators Sales And Service, Inc., 439 F.3d 9, 17 (1st Cir. 2006)(outlining the McConnell test in the

---

[2] The Court dismissed these defendants, save for the United States, in the Opinion and Order addressing the motion to dismiss. (Docket No. 43).

CIVIL NO. 11-1457 (JAG)                                                    11

context of an ADEA claim). The framework outlined above applies equally to age and gender discrimination claims under ADEA and Title VII.

Discrimination Claims

The federal-sector provision of the ADEA provides that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age ... shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). It is therefore unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment" on the basis of the employee's age. Id. at § 623(a)(1). Title VII imposes an identical prohibition when the discrimination relates to the employee's gender. See 42 U.S.C. § 2000e-2(a)(1).

While the Government contends Plaintiff fails to establish a *prima facie* of age or gender discrimination, its argument is meandering and hard to make out. Still, we need not dwell much here. "On summary judgment, the need to order the presentation of proof is largely obviated, and a court may often dispense with strict attention to the burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a jury question as to pretext and discriminatory animus." Fennell v. First Step Designs, Ltd., 83 F.3d 526, 535 (1st Cir.

CIVIL NO. 11-1457 (JAG)                                            12

1996). Thus, we assume Plaintiff has "made out a prima facie case [and] move on," García v. Bristol-Myers Squibb Co., 535 F.3d 23, 31 (1st Cir. 2008), to the meat of the case: whether the Government set forth a legitimate reason for its action, and if so, whether Plaintiff showed that reason was merely pretext for discrimination.

The Government explains that Plaintiff had a series of work-related injuries that forced the Postal Service to modify her duties in order to comply with her medical restrictions. To wit, Plaintiff had lower back and carpal tunnel injuries that were evidenced by her DOL forms. This adjustment phase went on for a while, with the Postal Service making "[s]everal offers of a modified work schedule" to accommodate Plaintiff's medical limitations. (See Defendant's Uncontested Fact # 7, supra). Plaintiff worked for a few months as a "General Clerk," but once her condition became "aggravated," she needed "a much more passive job." (Id. # 8). The Postal Service then offered Plaintiff a night-shift job, but she declined, alleging she had a sleep disorder. (Id. #9).

The NRP was then implemented, through which the Postal Service made adjustments for decreased funding and workload it was experiencing. As part of this plan, the Postal Service assigned Plaintiff to a new position monitoring machines, and

with a significantly reduced work schedule. Plaintiff accepted this position, and signed the modified work agreement at a meeting in which she was accompanied by two union representatives.

Given the situation described above, the Court finds the Government has offered a legitimate and non-discriminatory reason for Plaintiff's reduction in hours. The Postal Service was actively seeking to accommodate Plaintiff's medical conditions, while also dealing with the difficult task of implementing the NPR. At this point, it is Plaintiff's job to show "by a preponderance of the evidence, that the employer's articulated reason for the adverse employment action is pretextual and that the true reason for the adverse action is discriminatory." Lockridge v. Univ. of Me. Sys., 597 F.3d 464, 470 (1st Cir. 2010).

Plaintiff fails to meet this burden. Her brief in opposition to the Government's motion for summary judgment addresses only the *prima facie* issue, and completely ignores the rest of the burden-shifting framework. As noted above, the ultimate burden of proof remains with Plaintiff on her discrimination claims. Plaintiff has failed to rebut the reason proffered by the Government. Therefore, her age and gender discrimination claims fail as a matter of law.

CIVIL NO. 11-1457 (JAG)                                                          14

Even if Plaintiff had managed to mount some rebuttal to the Government's proffer, she would have little chance to succeed. The record simply does not reflect that the Postal Service's actions contained even a *scintilla* of discriminatory animus based on age or gender. Therefore, "no factfinder could rationally conclude from the record […] that the termination - whatever its precise motivation- was motivated by discrimination based upon [Plaintiff's age or gender]." Hoffman v. Applicators Sales And Service, Inc., 439 F.3d 9, 18 (1st Cir. 2006)(citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000)).

Hostile Work Environment

Hostile work environment claims under the ADEA and Title VII follow similar analytic paths. To prove that she was subject to a hostile work environment, Plaintiff has the burden of showing that the conduct complained of "is severe and pervasive enough to create an objectively hostile or abusive work environment and is subjectively perceived by the victim as abusive." Rivera-Rodríguez v. Frito Lay Snacks Caribbean, 265 F.3d 15, 24 (1st Cir. 2001), abrogated on other grounds by National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). This analysis requires the Court to assess the totality of the circumstances present. "These may include the frequency of the

CASE NO. 11-1457 (JAG)

discriminatory conduct; its severity; whether it is physically
threatening or humiliating, or a mere offensive utterance; and
whether it unreasonably interferes with an employee's work
performance." Landrau-Romero v. Banco Popular De Puerto Rico,
212 F.3d 607, 613 (1st Cir. 2000)(quoting Harris v. Forklift
Systems, Inc., 510 U.S. 17, 23 (1993)).

Plaintiff claims that the Postal Service created a hostile
work environment in reducing her work hours. The Court notes
that Plaintiff fails to defend her hostile work environment
claims in her opposition. In any event, it is clear that the
claim fails as a matter of law. As the Government correctly
notes, the reduction in hours neither "had the purpose or effect
of unreasonably interfering with [Plaintiff's] work performance"
nor created an objectively "intimidating, hostile or offensive
work environment." (Docket No. 32-1). The behavior Plaintiff
complains of is simply not the stuff that would support a
hostile work environment claim.[3]

---

[3] In her brief, Plaintiff states that the Postal Service's
officers made comments such as: "she already have 50 years old;
she should go;" and "she even has more 'balls' than me." (Docket
No. 35-2 at p. 4). Nevertheless, these statements are not found
anywhere on the record and are therefore properly discarded in
this analysis. See Local Rule 56.

CIVIL NO. 11-1457 (JAG)                                                    16

Supplemental Jurisdiction

        "As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims." Rodríguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) (citing  United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966); see also Martínez v. Colón, 54 F.3d 980, 990 (1st Cir. 1995) (affirming the dismissal without prejudice of pendent claims when the district court determined "far in advance of trial that no legitimate federal question existed"). A ruling on Plaintiff's state law claims is unnecessary to reach the holding disposing of federal claims in this case. As such, the Court will dismiss Plaintiff's remaining state-law claims without prejudice.

**CONCLUSION**

        In light of the above, the Government's motion for summary judgment is granted in its entirety. Judgment shall follow dismissing Plaintiff's remaining federal claims with prejudice, and her state-law claims without prejudice.

IT IS SO ORDERED.
In San Juan, Puerto Rico, this 28th day of March, 2013.

**CIVIL NO.** 11-1457 (JAG)                                                 17

S/ Jay A. Garcia-Gregory
United States District Judge